**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No. 05-10213-01-MLB |
| ) | |
| EVER MIGUEL JURADO-LARA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant's motion to dismiss the even numbered counts of the April 4, 2007 second superseding indictment. (Doc. 29.) The second superseding indictment charges violations of various fraud and identity theft statutes. (Doc. 24.)

Defendant moves to dismiss the eleven counts of the second superceding indictment that allege conduct in violation of 18 U.S.C. § 1028A. Section 1028A is an aggravated identity theft statute, and it states, in pertinent part:

> Whoever, during and in relation to any felony enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). The aggravated identity theft statute was enacted July 15, 2004. Defendant argues that these counts are ex post facto prosecutions in violation of the United States Constitution.[1]

---

[1] "No . . . ex post facto Law shall be passed." U.S. Const. art. 1, § 9, cl. 3.

The ex post facto clause prohibits "'any statute which punishes as a crime, which was innocent when done; which makes more burdensome the punishment for a crime, after is commission.'" Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)).

The government filed its response and agreed to dismissal of the even numbered counts 2 through 18, recognizing that these counts charged conduct prior to the enactment of the aggravated identity theft statute.[2]  (Doc. 30.)  The government argues against dismissal of counts 20 and 22, however.  Counts 20 and 22 allege that in March 2005, defendant knowingly used another person's Social Security card and, in relation to counts 19 and 21, caused false information to be furnished to the Commissioner of Social Security.  (Doc. 24 at 10-11.)

The government alleges that in January 2004 and May 2004, defendant used another person's Social Security card to obtain

---

[2] The government reports that at the time it charged the aggravated identity theft counts it believed that the statute was nothing more than a more specific version of 18 U.S.C. § 1028(a)(7).  Section 1028(a)(7) prohibits transferring, possessing, and using another person's identification and carries a maximum penalty of three years in prison.  Because this is more than the mandatory two-year prison term of the aggravated identity theft statute, the government believed that the statute did not create a new crime or make punishment more burdensome.  (Doc. 30 at 2.)

The government now concedes, however, that the aggravated identity theft statute's mandatory minimum penalty imposes a more burdensome penalty.  The previous statute was a statutory maximum penalty and, therefore, punishment under the old statute could have been less than the new mandated minimum of two years.  See Dobbert v. Florida, 432 U.S. 282, 300 (1977) (discussing Lindsey v. Washington, 301 U.S. 397 (1937), and stating that the ex post facto clause had been violated because "under the new law, it was the only sentence he could have received, while under the old law the sentencing judge could in his discretion have imposed a much shorter sentence").  As a result, the government agreed to dismissal of the even numbered counts 2 through 18 as violations of the ex post facto clause.  (Doc. 30 at 3.)

employment, in turn causing those employers, in March 2005, to submit that false information to the Social Security Commission.  The government argues that, although the conduct that started the alleged crime occurred prior to the effect of the aggravated identity theft statute, defendant did nothing to stop his employer's from transmitting the false information after the aggravated identity theft statute took effect.  The government argues that because the consequences of defendant's alleged activity did not take place until after July 2004, his alleged acts can be prosecuted under the new statute.[3]  (Doc. 30 at 4.)

With regard to counts 20 and 22, defendant is alleged to have violated the aggravated identity theft statute during and in relation to a violation of 42 U.S.C. § 408(a)(6).  Section 408(a)(6) states:

> Whoever willfully, knowingly, and with intent to deceive the Commissioner of Social Security as to his true identity (or the true identity of any other person) furnishes or causes to be furnished false information to the Commissioner of Social Security with respect to any information required by the Commissioner of Social Security . . .

---

[3] Because defendant did not file a reply, he did not directly respond to this argument by the government.

In support of its position, the government cites cases holding that "when a crime involves a continuing violation, application of a law enacted after the crime begins does not implicate the ex post facto clause."  United States v. Boyd, 149 F.3d 1062, 1068 (10th Cir. 1998).  The Boyd case cites as supporting authority two Tenth Circuit cases finding continuing violations in the crime of conspiracy.  See, e.g., United States v. Massey, 48 F.3d 1560, 1568 n.7 (10th Cir. 1995); United States v. Stanberry, 963 F.2d 1323, 1327 (10th Cir. 1992).  Continuing violations have also been found, in some circuit courts of appeals, in the crimes of bank and mail fraud.  United States v. Reitmeyer, 356 F.3d 1313, 1324 n.15 (10th Cir. 2004) (citing cases and noting circuit split with regard to the issue).

The aggravated identity theft statute, however, is easily distinguishable as it defines a distinct act, the violation of which occurs at a precise moment in time.  This is unlike the crime of conspiracy which has elements that occur over a span of time.

>       shall be guilty of a felony . . . .

The alleged violation of § 408(a)(6) occurred when defendant allegedly knowingly caused to be furnished false identification paperwork to the Social Security Commissioner. The government alleges that defendant provided false identification documents to employers in January 2004 and May 2004. If defendant had provided these allegedly false documents to the employers, but the employers never furnished them to the Commissioner of Social Security, a violation of § 408(a)(6) could not have been charged. The crime charged in § 408(a)(6) is that defendant caused false identification documents to be furnished to the Commissioner of Social Security. The crime was not complete until March 2005, when the allegedly false information was provided to the Commissioner of Social Security. Therefore, the conduct of defendant that violated 408(a)(6) was completed in March 2005.

Under the aggravated identity theft statute, however, the unlawful conduct "during and in relation" to the violations of § 408(a)(6) occurred when defendant allegedly "knowingly transfer[ed], possesse[d], or use[d], without lawful authority, a means of identification of another person." This alleged conduct, by the government's own contention, occurred in January and May 2004, before the aggravated identity theft statute was in effect. Therefore, counts 20 and 22 violate the ex post facto clause because they seek to impose punishment for an offense that would be more burdensome than at the time it was committed. As a result, defendant's motion to dismiss is GRANTED.

IT IS SO ORDERED.

Dated this __4th__ day of May, 2007, at Wichita, Kansas.

                                        S/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE